229 P.3d 752 (2010)
STATE of Washington, Respondent,
v.
Theodore R. RHONE, Petitioner.
No. 80037-5.
Supreme Court of Washington, En Banc.
Argued October 13, 2009.
Decided April 1, 2010.
*753 Rita Joan Griffith, Attorney at Law, Seattle, WA, for Petitioner.
Karen Anne Watson, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
Charles Christian Sipos, Lisa Marshall Manheim, Perkins Coie L.L.P., Sarah A. Dunne, Nancy Lynn Talner, ACLU, Seattle, WA, for amicus curiae American Civil Liberties Union.
C. JOHNSON, J.
¶ 1 This case involves the question of whether a prosecutor's peremptory challenge of the only African-American venire member in a trial of an African-American defendant amounts to a prima facie case of discrimination in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court concluded that defendant Theodore Rhone failed to establish a prima facie case of discrimination under Batson, did not require the prosecutor to provide a race-neutral explanation for his challenge, and denied Rhone's challenge. Rhone's conviction was affirmed by the Court of Appeals. We affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2 Rhone, an African-American, was charged with robbery in the first degree, unlawful possession of a controlled substance with intent to deliver, unlawful possession of a firearm in the first degree, and bail jumping. There were two African-Americans in the 41-member venire pool, one of whom was challenged for cause per agreement by the parties. The other, juror 19, was removed by one of the prosecutor's peremptory challenges. Neither Rhone nor his counsel objected when juror 19 was removed.
¶ 3 After the jury was sworn in, but prior to trial, defense counsel informed the trial court that Rhone wished to make a statement. Rhone stated the following:
I don't mean to be facetious or disrespectful or a burden to the Court. However, I do want a jury of my peers. And I notice that [the prosecutor] took away the black, African-American, man off the jury.
Also, if I can't have  I would like to have someone that represents my culture as well as your culture. To have this the way it is to me seems unfair to me. It's not a jury of my peers. I'm  I mean, I am an African-American black male, 48 years old. I would like someone of culture, of color, that has  perhaps may have had to deal with improperties [sic] and so forth, to understand what's going on and what could be happening in this trial.
*754 Verbatim Report of Proceedings (VRP), Vol. 6 (Apr. 28, 2005) at 439. Defense counsel informed the court that Rhone was requesting a new jury pool.[1] The trial court understood Rhone's statement to be a Batson challenge. The prosecutor offered to respond to Rhone's Batson challenge, but the trial court declined the offer, stating that "the Court is prepared to rule on the issue." VRP, Vol. 7 (Apr. 28, 2005) at 450-51.
¶ 4 In making its ruling, the court twice mentioned that a defendant is entitled to protection from systematic exclusion of jurors based on race:
The only right the criminal defendant has is that the selection process which produced the jury did not offer it to systematically exclude distinctive groups in the community ... this right is subject to the commands of the Equal Protection clause of the 14th Amendment which prohibits systematic exclusion of otherwise qualified jurors based solely on race.
VRP, Vol. 7 (Apr. 28, 2005) at 451 (emphasis added). The court then treated Rhone's comments as a Batson objection and applied the factors relevant to prove a prima facie case of discrimination under the first part of the analysis. The court stated:
Here the defendant has not provided this Court with any evidence of circumstances raising an inference of discrimination by the prosecution. The defendant merely makes a bare assertion that there are no African-Americans on this jury. ... The mere fact that [sic] State exercised its preemptory [sic] on that African-American, without more, is insufficient to establish a prima facie case of discrimination. Defense's request is denied.
VRP, Vol. 7 (Apr. 28, 2005) at 452-53.
¶ 5 The jury found Rhone guilty of all charges. Rhone timely appealed. The Court of Appeals affirmed the trial court in an unpublished opinion, holding, in part, that "numbers alone" were insufficient to establish a prima facie case of discrimination under Batson and that Rhone failed to provide other evidence indicating a discriminatory purpose. State v. Rhone, noted at 137 Wash. App. 1046, 2007 WL 831725, at *7. The Court of Appeals also noted that the trial court was in the best position to evaluate the prosecutor's demeanor, and in this case the trial court was not suspicious that the State had acted with a discriminatory purpose.

ISSUE
¶ 6 Did the trial court err by ruling that the prosecutor's removal of the only African-American venire member did not establish a prima facie case of discrimination in violation of Batson ?

ANALYSIS
¶ 7 In Batson, the United States Supreme Court recognized that, although a defendant has no right to a "`jury composed in whole or in part of persons of his own race,'" the equal protection clause requires defendants to be "tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson, 476 U.S. at 85-86, 106 S.Ct. 1712, (quoting Strauder v. West Virginia, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1879)). Batson established a three-part analysis to determine whether a venire member was peremptorily challenged pursuant to discriminatory criteria.[2] A defendant challenging a *755 prosecutor's peremptory challenge of a venire member must first establish a prima facie case of purposeful discrimination. To establish this prima facie case, the court held that the defendant must provide evidence of any relevant circumstances that "raise an inference" that a peremptory challenge was used to exclude a venire member from the jury on account of the venire member's race. Batson, 476 U.S. at 96, 106 S.Ct. 1712. Second, if a prima facie case is established, the burden shifts to the prosecutor to come forward with a race-neutral explanation for challenging the venire member. Finally, the trial court determines whether the defendant has established purposeful discrimination.[3]
¶ 8 "In reviewing a trial court's ruling on a Batson challenge, `[t]he determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly erroneous.'" State v. Hicks, 163 Wash.2d 477, 486, 181 P.3d 831 (2008) (internal quotation marks omitted) (quoting State v. Luvene, 127 Wash.2d 690, 903 P.2d 960 (1995)).
¶ 9 Rhone argues that the trial court's reference to a "systematic exclusion of jurors" was an error warranting automatic reversal.[4] The State argues that the trial court corrected the error when the court applied Batson's "inference of discriminatory purpose" standard and correctly ruled that Rhone failed to establish a prima facie case of discrimination.[5] Because the trial court applied the correct standard under Batson, its prior reference to an incorrect standard does not establish error.
¶ 10 Rhone urges this court to adopt a bright-line rule that a prima facie case of discrimination is always established whenever a prosecutor peremptorily challenges a venire member who is a member of a racially cognizable group. Alternatively, Rhone argues that under the facts of this case, the trial court's determination that Rhone had failed to establish a prima facie case of discrimination was clearly erroneous. The State argues that Washington case law does not support a bright-line rule and that the trial court acted within its discretion.
¶ 11 Amicus Brief of the American Civil Liberties Union (ACLU) supports Rhone in urging this court to adopt a bright-line rule. ACLU argues that such a rule would not impose any undue additional burden on the State, but would instead (1) ensure an adequate record for appellate review, (2) account for the realities of the demographic composition of Washington venires, and (3) effectuate the Washington Constitution's elevated protection of the right to a fair jury trial.
¶ 12 We recently reaffirmed the rule that "a trial court is `not required to find a prima facie case [of discriminatory purpose] based on the dismissal of the only venire person from a constitutionally cognizable group, but they may, in their discretion, recognize a prima facie case in such instances.'" State v. Thomas, 166 Wash.2d 380, 397, 208 P.3d 1107 (2009) (quoting Hicks, 163 Wash.2d at 490, 181 P.3d 831). Hicks involved the issue of whether a trial court erred by denying the Batson challenge made by Phillip Hicks and Rashad Babbs, both African-Americans, to the exclusion of the only African-American venire member. There, defense counsel argued that, because the prosecutor had not asked the African-American venire member any questions during voir dire, race must have been the reason for removing her. The trial court ruled: "`[O]ut of an abundance of *756 caution, I find a prima facie case [of discrimination].'" Hicks, 163 Wash.2d at 484, 181 P.3d 831 (alterations in original) (quoting court proceedings). On review, we held that the trial court's determination that the defendants had established a prima facie of discrimination was not clearly erroneous due to the presence of circumstances evincing "something more" than a peremptory challenge of a member of a racially cognizable group, i.e., the questions the prosecutor asked of the African-American venire member and of other venire members. In the case at hand, we consider the other side of the coin, i.e., where the trial court determined that the defendant had not established a prima facie case of discrimination. However, the same "clearly erroneous" standard applies under these circumstances.
¶ 13 In this case, we conclude that a bright-line rule superseding a trial court's discretion in determining whether a defendant has established a prima facie case of discrimination is inconsistent with Batson. Batson provided for a three-part analysis, the first part directing the trial court to determine whether "something more" exists than a peremptory challenge of a member of a racially cognizable group. Adopting a bright-line rule would negate this first part of the analysis and require a prosecutor to provide an explanation every time a member of a racially cognizable group is peremptorily challenged. Such a rule is beyond the intended scope of Batson, transforming a shield against discrimination into a sword cutting against the purpose of a peremptory challenge:
The peremptory challenge ... exists to give the task of sorting out the biases most relevant in the given case to those most competent of determining it, i.e., the parties, and to give the parties a degree of flexibility and control over the constitution of the jury panel through their implementation of the challenge mechanism.
Peter J. Richards, The Discreet Charm of the Mixed Jury: The Epistemology of Jury Selection and the Perils of Post-Modernism, 26 Seattle U.L.Rev. 445, 459 (2003). Such an approach would also be inconsistent with what we stated in Hicks and what other courts have held.
¶ 14 Cases from other states support this holding, attesting to the imperative to require "something more" than a peremptory challenge against a member of a racially cognizable group. See, e.g., People v. Carasi, 44 Cal.4th 1263, 1292, 190 P.3d 616, 82 Cal. Rptr.3d 265 (2008) ("In this first stage of any [Batson] inquiry, the burden rests on the defendant to `show [] that the totality of the relevant facts gives rise to an inference of discriminatory purpose' .... [The prosecutor] was not obliged to disclose such reasons [for his peremptory challenge of a member of a racially cognizable group], and the trial court was not required to evaluate them, unless and until a prima face case was made" (internal citations omitted)); People v. Davis, 231 Ill.2d 349, 361, 899 N.E.2d 238, 326 Ill. Dec. 21 (2008) ("[T]he mere fact of a peremptory challenge of a black venireperson who is the same race as defendant or the mere number of black venirepersons peremptorily challenged, without more, will not establish a prima facie case of discrimination.... [T]he number of persons struck takes on meaning only when coupled with other information such as the voir dire answers of those who were struck compared to the answers of those who were not struck" (internal citations omitted)); People v. MacShane, 11 N.Y.3d 841, 842, 901 N.E.2d 186, 872 N.Y.S.2d 695 (2008) ("[Defendant] failed to meet his burden of establishing a prima facie case of discrimination under step one of the three-step protocol in [Batson].... He did not articulate facts and circumstances that raised an inference that the prosecutor excused these jurors for a discriminatory reason; instead, defense counsel merely identified a general motive to discriminate untethered to the particular jurors at issue."). These cases support our view that the defendant must establish "something more" than the venire member's removal and that the trial court possesses broad discretion in making its findings.
¶ 15 The narrow issue remaining before us is whether the trial court's conclusion that there was not "something more" evincing an inference of discrimination in this case was clearly erroneous. Certainly, Rhone's objection *757 at trial was insufficient. But Rhone argues that an inference of discrimination is established in this case because the only African-American venire member, juror 19, was stricken from the jury pool even though his background and answers to voir dire questions were similar to those of a non-African-American venire member, juror 33, who was seated as an alternate. The State argues that the similarity of the venire members failed to raise an inference of discrimination.
¶ 16 As we have already noted, "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson v. California, 545 U.S. 162, 170, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005). But before the trial court, Rhone failed to supply any evidence of circumstances raising an inference of discrimination by the prosecution, but only acknowledged that an African-American venire member had been removed by the prosecutor's peremptory challenge. VRP, Vol. 7 (Apr. 28, 2005) at 439. The similarity between jurors 19 and 33 was raised only by amicus ACLU and in the State's response to the ACLU; Rhone's briefing is silent on the similarity between jurors 19 and 33, and Rhone's counsel did not raise the issue until oral argument before this court.[6] The trial court therefore did not err when it stated that the "defendant has not provided this Court with any evidence of circumstances raising an inference of discrimination by the prosecution. The defendant merely makes a bare assertion that there are no African-Americans on this jury." VRP, Vol. 7 (Apr. 28, 2005) at 452.
¶ 17 Although Rhone failed to raise any circumstances evincing an inference of discrimination before the trial court, a trial court must still consider whether such circumstances exist, i.e., "something more" than a peremptory challenge against a member of a racially cognizable group. Such circumstances include (1) striking a group of otherwise heterogeneous venire members who have race as their only common characteristic, (2) exercising a disproportionate use of strikes against a group, (3) the level of a group's representation in the venire as compared to the jury, (4) the race of the defendant and the victim, (5) past discriminatory use of peremptory challenges by the prosecuting attorney, (6) the type and manner of the prosecuting attorney's questions during voir dire, (7) disparate impact of using all or most of the challenges to remove minorities from the jury, and (8) similarities between those individuals who remain on the jury and those who have been struck. State v. Wright, 78 Wash.App. 93, 100-01, 896 P.2d 713 (1995) (holding, among other things, that a trial court "should not elicit the prosecutor's race-neutral explanation before determining whether the defense has established a prima facie case. To do so would collapse the Batson two-part analysis. If the trial court concludes no prima facie case exists, the prosecutor is not required to offer a race-neutral explanation" (citation omitted)). We agree with Wright's approach but note that these considerations are not exclusive and merely offer a guideline of what trial courts might, in a given case, consider in determining whether a defendant has established "something more."
¶ 18 In the present case, the lattermost circumstance is the most applicable, i.e., the similarity between African-American juror 19, who was struck from the jury, and non-African-American juror 33, who served on the jury as an alternate. But the record shows that juror 33 had experience as a juror on two separate criminal cases, both in Pierce County where Rhone's trial was held, which reached a verdict; juror 19 had no prior experience as a juror. VRP, Voir Dire, Vol. 2 (Apr. 28, 2005) at 55-69. The record therefore shows that some differences between the venire members did exist.
¶ 19 Rhone may be correct that had these arguments been presented to the trial court, it could have inferred a discriminatory motive from the totality of circumstances *758 surrounding the prosecutor's peremptory challenge of juror 19. Alternatively, it was just as reasonable for the trial court not to infer a discriminatory motive. On review, the defendant faces a heightened burden: where reasonable minds may differ in finding an inference of discrimination, an appellate court may not conclude that a trial court's determination regarding that inference is clearly erroneous. See Rice v. Collins, 546 U.S. 333, 341-342, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."); Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ("[D]eterminations of credibility and demeanor lie `peculiarly within a trial judge's province,' [and] `in the absence of exceptional circumstances, we would defer to [the trial court].'" (third alteration in original) (internal quotation marks omitted) (quoting Hernandez v. New York, 500 U.S. 352, 365, 366, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion))); Hicks, 163 Wash.2d at 490, 181 P.3d 831 ("Lower courts have been entrusted with the task of determining the type and amount of proof necessary for a defendant to establish a prima facie case of discrimination."). In light of the differences between jurors 19 and 33 exhibited in the cold record before us and the deference appellate courts owe to a trial court's discretionary decision, we cannot conclude that the trial court erred by not finding "something more" than a peremptory challenge against a member of a racially cognizable group. Rhone has failed to meet his burden on review to show that the trial court's determination that he failed to raise an inference of discrimination was clearly erroneous.

CONCLUSION
¶ 20 We hold that the trial court applied the correct standard of review under Batson and that the trial court's determination that Rhone failed to establish a prima facie case of discrimination was not clearly erroneous. Accordingly, we affirm the Court of Appeals' decision and Rhone's conviction.
WE CONCUR: SUSAN OWENS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (concurring).
¶ 21 I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent.
ALEXANDER, J. (dissenting).
¶ 22 I dissent because, in my view, the lead opinion wrongly concludes that Theodore Rhone failed to establish a prima facie case of discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and is, therefore, not entitled to a new trial. In that regard, the lead opinion errs in putting its interpretation on the trial court's consideration of systemic[1] discrimination as part of its Batson analysis.
¶ 23 I would have this court adopt a bright line rule that a defendant establishes a prima facie case of discrimination when, as here, the record shows that the State exercised a peremptory challenge against the sole remaining venire member of the defendant's constitutionally cognizable racial group. For these reasons, I advocate reversing the Court of Appeals' decision affirming Rhone's conviction and sentence and would remand for a new trial.
¶ 24 In Batson, the United States Supreme Court unequivocally recognized that the equal protection clause requires that defendants be "tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson, 476 U.S. at 86, 106 S.Ct. 1712 (citing Martin v. Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497 (1906)). As the lead opinion observes, Batson outlines a three-part test to determine whether a venire *759 member was impermissibly excluded pursuant to discriminatory criteria. Lead op. at 754-55. To meet the test, the defendant must first make out a prima facie case of discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. State v. Hicks, 163 Wash.2d 477, 489, 181 P.3d 831 (citing Batson, 476 U.S. at 93-94, 106 S.Ct. 1712), cert. denied, ___ U.S. ___, 129 S.Ct. 278, 172 L.Ed.2d 205 (2008). If the defendant does so, the burden shifts to the State to present a neutral explanation for challenging the juror. Id. (citing Batson, 476 U.S. at 97, 106 S.Ct. 1712). The trial court must then determine if the defendant has established purposeful discrimination. Id. (citing Batson, 476 U.S. at 98, 106 S.Ct. 1712). As the lead opinion notes, only the first factor of the Batson test is at issue here.
¶ 25 In Batson, the United States Supreme Court clearly determined that "`a consistent pattern of official racial discrimination' is not `a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" Batson, 476 U.S. at 95, 106 S.Ct. 1712 (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977)). In Batson, the United States Supreme Court replaced the previous "threshold requirement to prove systemic discrimination under a Fourteenth Amendment jury claim, with the rule that discrimination by the prosecutor in selecting the defendant's jury sufficed to establish the constitutional violation." Miller-El v. Dretke, 545 U.S. 231, 236, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).
¶ 26 In my view, the trial court's consideration of systematic discrimination in its analysis of whether Rhone established a prima facie case of discrimination under Batson was clearly erroneous. In support of its decision, the trial court stated:
The only right the criminal defendant has is that the selection process which produced the jury did not offer it to systematically exclude distinctive groups in the community. ...
... [T]his right is subject to the commands of the Equal Protection [C]lause of the 14th Amendment which prohibits systematic exclusion of otherwise qualified jurors based solely on race.
Verbatim Report of Proceedings at 451 (emphasis added). The lead opinion appears to concede that the trial court referred to an incorrect standard. It goes on to say, though, that it was not error because the trial court later applied the correct standard. I disagree. After Batson, it is clearly inappropriate for a trial court to consider whether the jury selection process involves systemic exclusion of venire members based on a discriminatory purpose. See Batson, 476 U.S. at 95, 106 S.Ct. 1712. As noted above, a "single invidiously discriminatory governmental act" is sufficient to warrant reversal of a conviction. Id. Here, the trial court did not appear to recognize that fact and, consequently, its ruling on Rhone's Batson challenge was clearly erroneous having been based on a misinterpretation of the requirements to establish a prima facie case of discrimination.
¶ 27 It is my view, moreover, that we should adopt a bright line rule that a prima facie case of discrimination is established under Batson when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged. I recognize that we have previously held that "a trial court is `not required to find a prima facie case [of discriminatory purpose] based on the dismissal of the only venire person from a constitutionally cognizable group, but they may, in their discretion, recognize a prima facie case in such instances.'" State v. Thomas, 166 Wash.2d 380, 397, 208 P.3d 1107 (2009) (quoting Hicks, 163 Wash.2d at 490, 181 P.3d 831) (alteration in original). Nevertheless, I am convinced that it makes sense to adopt the bright line rule proposed by Rhone and amicus American Civil Liberties Union (ACLU).
¶ 28 One of the strongest reasons to adopt such a bright line rule is that the benefits of such a rule far outweigh the State's minimal burden to provide a race-neutral explanation *760 for its challenge during venire. As the lead opinion notes, some of these benefits include ensuring an adequate record for appellate review, accounting for the realities of the demographic composition of Washington venires,[2] and effectuating the Washington Constitution's elevated protection of the right to a fair jury trial. Lead op. at 755.
¶ 29 Speculation after the fact about whether the State had a discriminatory purpose in exercising a peremptory challenge is unreliable. The need to speculate can be avoided entirely by requiring the State to provide a short explanation when a defendant raises a Batson challenge. The United States Supreme Court noted in Johnson v. California, 545 U.S. 162, 172, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), that the Batson inquiry was designed to produce actual answers to suspicions that peremptory challenges are racially motivated, stating that "[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." A bright line rule would provide clarity and certainty concerning the State's obligations in future cases and would simultaneously engender greater fidelity to Batson and its equal protection guaranty.
¶ 30 The lead opinion claims that adopting a bright line rule is beyond the intended scope of Batson and would transform "a shield against discrimination into a sword cutting against the purpose of a peremptory challenge." Lead op. at 756. I disagree. A bright line rule would merely require the State to offer a race-neutral explanation for its peremptory challenge. So long as the State's purpose in excluding the venire member is nondiscriminatory, it will be permitted to exercise its challenge and the purpose of the peremptory challenge will not be undermined.
¶ 31 The lead opinion also claims that a bright line rule would be "inconsistent" with what other courts have held. Id. The fact is that there is a split among the jurisdictions. Some have held that a prima facie case of discrimination is established under Batson either when the last remaining member of the defendant's cognizable racial group is dismissed or when the last remaining minority venire member is peremptorily challenged. See, e.g., United States v. Chalan, 812 F.2d 1302, 1314 (10th Cir.1987) (holding the government's exercise of a peremptory challenge to strike the last remaining juror of defendant's race is sufficient to raise an inference that the juror was excluded on account of his race); Hollamon v. State, 312 Ark. 48, 846 S.W.2d 663, 666 (1993) ("the defendant must first establish a prima facie case of purposeful discrimination, which the appellant clearly did ... when he pointed to a peremptory strike by the state dismissing the sole black person on the jury"); People v. Portley, 857 P.2d 459, 464 (Colo.Ct.App.1992) (holding a defendant establishes a prima facie case of discrimination if no members of a cognizable racial group are left on a jury as a result of the prosecutor's exercise of peremptory challenge, even when alternate jurors who remain on the venire are members of a cognizable racial group); State v. Holloway, 209 Conn. 636, 553 A.2d 166 (1989) (citing with approval the rule that after a party objects to a strike, the proponent of the strike must offer a racially neutral explanation); Highler v. State, 854 N.E.2d 823, 827 (Ind.2006) (stating the removal of the only African-American juror raises an inference that the strike was racially motivated); State v. Parker, 836 S.W.2d 930, 940 (Mo.1992) (holding that once a defendant raises a Batson challenge, the trial court must conduct an evidentiary hearing to determine whether the prosecutor's strike was racially motivated); State v. Rayfield, 369 S.C. 106, 631 S.E.2d 244, 247 (2006) ("After a party objects to a jury strike, the *761 proponent of the strike must offer a facially race-neutral explanation.").
¶ 32 Adopting a bright line rule similar to that which has been adopted by the above jurisdictions would provide a significant benefit in that the voir dire process would remain fair and nondiscriminatory, while ensuring that parties are able to continue exercising legitimate peremptory challenges. This rule, additionally, would prevent speculation after the fact about the basis for potentially discriminatory peremptory strikes and safeguard the Fourteenth Amendment protections established in Batson. As such, I would hold that when the defendant objects, the State must provide a race-neutral reason for exercising a peremptory challenge against the only remaining minority member of the defendant's cognizable racial group or the only remaining minority in the venire. I would hold, in addition, that the trial court clearly erred in considering "systematic discrimination" as part of its Batson analysis. I would, therefore, reverse Rhone's conviction and sentence and remand for a new trial.
¶ 33 For these reasons, I respectfully dissent.
WE CONCUR: MARY E. FAIRHURST, RICHARD B. SANDERS, and TOM CHAMBERS, Justices.
NOTES
[1] Rhone's challenge was made after juror 19 was dismissed and the jury panel was sworn in. Accordingly, had the trial court concluded that the prosecutor's peremptory challenge of juror 19 was discriminatory, juror 19 would be unable to be reinstated into the jury pool. Rather, the trial court would be required to dismiss the entire jury, declare a mistrial, and reopen voir dire with a new jury pool.
[2] The United States Supreme Court has expanded the scope of Batson's basic constitutional rule:

It has applied Batson's antidiscrimination test to the use of peremptories by criminal defendants, Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), by private litigants in civil cases, Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), and by prosecutors where the defendant and the excluded juror are of different races, Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). It has recognized that the Constitution protects not just defendants, but the jurors themselves. [Powers, 499 U.S. at 409, 111 S.Ct. 1364.] And it has held that equal protection principles prohibit excusing jurors on account of gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
Miller-El v. Dretke, 545 U.S. 231, 269-70, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (Breyer, J., concurring).
[3] The issue before us pertains to only the first part of the Batson analysis, i.e., whether a prima facie case was established.
[4] In adopting the Batson analysis, the United States Supreme Court replaced the previous "threshold requirement to prove systemic discrimination under a Fourteenth Amendment jury claim, with the rule that discrimination by the prosecutor in selecting the defendant's jury sufficed to establish the constitutional violation." Miller-El, 545 U.S. at 236, 125 S.Ct. 2317 (referring to the decision in Batson to overrule the systematic discrimination test in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)).
[5] The State also argues that Rhone's Batson challenge was untimely and should not be considered. The State, however, did not object to the timeliness of Rhone's Batson challenge at the trial court, and the Court of Appeals did not address this issue. We therefore proceed to the merits of Rhone's claims.
[6] Rhone did not supplement the record with a transcript of the voir dire proceedings until after we granted review.
[1] As explained below, when the United States Supreme Court adopted Batson, it replaced the previous threshold requirement for a defendant to show "systemic discrimination" in proving that his Fourteenth Amendment rights were violated. See Miller-El v. Dretke, 545 U.S. 231, 236, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (emphasis added). The trial court here, however, explained to Rhone that the Fourteenth Amendment prohibits "systematic" discrimination of jurors based on race. Verbatim Report of Proceedings at 451 (emphasis added).
[2] According to amicus ACLU, "`African Americans comprise 3.36% of the state population in Washington but received 14.91% of all felony convictions and were the most over-represented racial group with a 4.44 [disproportionality] ratio.'" Amicus Br. of ACLU at 9 (alteration in original) (citing Wash. Sentencing Guidelines Comm'n, Disproportionality in Adult Felony Sentencing 1 (Apr.2008), available at http://www.sgc. wa.gov/PUBS/ Disproportionality/Adult_Disproportionality_Disparity_FY07.pdf). Pierce County, where this case was tried, ranks 25th out of 30 counties analyzed in terms of overrepresentation of African-Americans in the criminal justice system. Id.