259 P.3d 324 (2011)
STATE of Washington, Respondent,
v.
Gary D. MEREDITH, Appellant.
No. 38600-3-II.
Court of Appeals of Washington, Division 2.
August 9, 2011.
*325 James Elliot Lobsenz, Carney Badley Spellman, Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.

OPINION PUBLISHED IN PART
PENOYAR, C.J.
¶ 1 Gary D. Meredith appeals his convictions for second degree child rape and communicating with a minor for immoral purposes. His primary contention is that the prosecutor's peremptory challenge of the sole African American venire member constituted a prima facie case of purposeful discrimination in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In the published part of this opinion, we review the facts relevant to his Batson claim and hold that a defendant does not establish a prima facie case of purposeful discrimination under Batson by showing only that the prosecutor peremptorily challenged the sole venire member of a cognizable racial group that is different from the defendant's racial group. We also conclude that Meredith failed to establish a prima facie case of purposeful discrimination here.
¶ 2 Meredith also argues that (1) the trial court violated his rights to confrontation and cross-examination, (2) insufficient evidence supports his communication with a minor for immoral purposes conviction, and (3) the trial *326 court improperly prohibited him from arguing about the absence of DNA[1] evidence during closing argument. In the unpublished portion of this opinion, we discuss the facts relevant to these claims, each of which we reject. Accordingly, we affirm on both counts.

PUBLISHED FACTS
¶ 3 In 1996, Meredith was preparing to stand trial on one count of second degree child rape[2] and one count of communication with a minor for immoral purposes.[3] During voir dire, the prosecutor peremptorily challenged juror 4, the sole African American on the venire. Meredith, who is Caucasian, objected, arguing that the State did not give a basis for challenging juror 4 and, thus, the "only belief can be that she was removed because of her minority status." III Report of Proceedings (RP) at 107.
¶ 4 The prosecutor responded that Meredith had failed to meet his burden under Batson to show purposeful discrimination because he failed to present any evidence for this claim other than that juror 4 was African American. Additionally, the prosecutor maintained that he did not strike other racial minorities on the venire, including one woman who appeared to be of "Southern European descent . . . or perhaps even Middle Eastern." III RP at 109. He observed that the juror questionnaires did not include information on the venire members' race, "so it's difficult to know who is and is not a racial minority." III RP at 109. The prosecutor further argued that, as the "other half of the Batson challenge" requires, Meredith failed to meet his burden of proof that he was of the same race as the excluded venire member. III RP at 109.
¶ 5 The trial court agreed with the prosecutor that removing the sole African American venire member was insufficient to establish a prima facie case of purposeful discrimination under Batson:
At this point in time, the Court finds that the burden of proof is on the Defendant to demonstrate the use of a peremptory challenge based on a discriminatory reason. Defense has failed in that proof, one, as to whether or not the Prosecuting Attorney's Office here in Pierce County exercises challenges in a racially biased or discriminatory manner, or two, that . . . [the] prosecutor in this case has done so. There is no evidence of racial bias in challenging Juror No. 4 on either of those two bas[es].
The fact that there has been an exclusion of a single black juror is insufficient to establish a prima facie case pattern of exclusion. This is under Batson and under State v. Ashcroft [Ashcraft],[[4]] even though from appearances she was the only black or African American juror on the panel. There being no other evidence, the Court denies the motion.
III RP at 111. Accordingly, the trial court did not require the prosecutor to provide a race-neutral reason for challenging juror 4.
¶ 6 The jury convicted Meredith on both counts. He appeals.

PUBLISHED ANALYSIS

Batson Challenge
¶ 7 We must decide whether Meredith established a prima facie case of purposeful discrimination under Batson by showing that the prosecutor removed the only African American venire member. We hold that he did not.
¶ 8 In Batson, the United States Supreme Court recognized that the Fourteenth Amendment's equal protection clause requires defendants to be "tried by a jury whose members are selected pursuant to nondiscriminatory criteria." 476 U.S. at 85-86, 106 S.Ct. 1712 (citing Martin v. Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497 (1906)). Batson articulated a three-part analysis to determine whether discriminatory *327 criteria were used to peremptorily challenge a venire member. 476 U.S. at 96-98, 106 S.Ct. 1712. First, the defendant must establish a prima facie case of purposeful discrimination. Batson, 476 U.S. at 96-97, 106 S.Ct. 1712. To establish a prima facie case, the defendant must provide evidence of any relevant circumstances that raise an inference that a peremptory challenge was used to exclude a venire member from the jury on account of his or her race. Batson, 476 U.S. at 96-97, 106 S.Ct. 1712. Second, if the defendant establishes this prima facie case, the burden shifts to the prosecutor to articulate a race-neutral explanation for challenging the venire member. Batson, 476 U.S. at 97, 106 S.Ct. 1712. Finally, the trial court must determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. 1712.
¶ 9 "In reviewing a trial court's ruling on a Batson challenge, [t]he determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly erroneous." State v. Hicks, 163 Wash.2d 477, 486, 181 P.3d 831 (2008) (internal quotation marks omitted) (quoting State v. Luvene, 127 Wash.2d 690, 699, 903 P.2d 960 (1995)).
¶ 10 Meredith argues that our Supreme Court's recent decision in State v. Rhone, 168 Wash.2d 645, 229 P.3d 752 (2010), cert. denied, ___ U.S. ___, 131 S.Ct. 522, 178 L.Ed.2d 385 (2010), created a bright-line rule in Washington that a defendant establishes a prima facie case of purposeful discrimination when the record shows that the prosecutor exercised a peremptory challenge against the sole remaining venire member of a constitutionally cognizable racial group. Because the prosecutor challenged the only African American venire member in the present case, Meredith concludes that he established a prima facie case of purposeful discrimination. He asserts that the trial court erred in determining otherwise, and he asks us to reverse his convictions and remand for a new trial.
¶ 11 In Rhone, there were two African Americans in the venire. 168 Wash.2d at 648, 229 P.3d 752. One was challenged for cause per the parties' agreement, and the other was removed by one of the prosecutor's peremptory challenges without an objection by the defense. Rhone, 168 Wash.2d at 648, 229 P.3d 752. After the jury was sworn in, the defendant, an African American, raised a Batson challenge. Rhone, 168 Wash.2d at 648-49, 229 P.3d 752. The trial court ruled that the defendant had failed to establish a prima facie case of purposeful discrimination. Rhone, 168 Wash.2d at 650, 229 P.3d 752.
¶ 12 In Rhone's lead opinion, four justices[5] rejected a bright-line rule that a prima facie case of discrimination is always established whenever the prosecutor peremptorily challenges a venire member who is a member of a racially cognizable group. 168 Wash.2d at 652-53, 229 P.3d 752. They noted that Batson involved a three-part analysis, in which the first part directs a trial court "to determine whether `something more' exists than a peremptory challenge of a member of a racially cognizable group." Rhone, 168 Wash.2d at 653, 229 P.3d 752. Consequently, they explained:
Adopting a bright-line rule would negate this first part of the analysis and require a prosecutor to provide an explanation every time a member of a racially cognizable group is peremptorily challenged. Such a rule is beyond the intended scope of Batson, transforming a shield against discrimination into a sword cutting against the purpose of a peremptory challenge.
Rhone, 168 Wash.2d at 653-54, 229 P.3d 752.
¶ 13 Chief Justice Madsen wrote a separate concurrence, stating, "I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent." Rhone, 168 Wash.2d at 658, 229 P.3d 752 (Madsen, C.J., concurring).
¶ 14 The dissent, which Justice Alexander[6] authored, advocated "a bright line rule that a prima facie case of discrimination is established under Batson when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged." Rhone, 168 *328 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting). The dissenters recognized that, under an earlier precedent,[7] a trial court has discretion to find a prima facie case of purposeful discrimination where the only venire member from a constitutionally cognizable group is peremptorily challenged; however, the dissenters were persuaded to depart from this precedent because "the benefits of [a bright-line rule] far outweigh the State's minimal burden to provide a race-neutral explanation for its challenge during venire." Rhone, 168 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting). Some of these benefits include ensuring an adequate record for appellate review, accounting for the realities of the demographic composition of Washington venires, and effectuating the Washington Constitution's elevated protection of the right to a fair jury trial. Rhone, 168 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting).
¶ 15 Rhone's future is uncertain now that a new justice has joined our Supreme Court. Other Batson cases in the future will present different facts, different challenges, and different results. In any case, we need not consider the reach of the bright-line rule advocated by Rhone's minority/possible future majority because the record here is inadequately developed to tell us with any certainty whether this case even falls within that rule.
¶ 16 First, although the challenged venire member in this case was African American, Meredith is not. Thus, under the first prong of the minority/possible future majority's bright-line rule, Meredith's claim falls short because the peremptorily challenged juror was not a "member of the defendant's constitutionally cognizable racial group." See Rhone, 168 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting) (emphasis added). And under the minority/possible future majority's second prong, Meredith fails again because the record does not clarify whether juror 4 was, in fact, the last remaining minority member of the venire. See Rhone, 168 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting). For instance, the prosecutor pointed out that at least one of the remaining venire members appeared to be a racial minority.
¶ 17 Turning to Rhone's majority/possible future minority opinion, we conclude that it also does not support Meredith's claim that he established a prima facie case of purposeful discrimination. Under that opinion's analysis, to determine whether a defendant has established a prima facie claim of purposeful discrimination, the trial court must look to see whether the record reflects "something more" than "a peremptory challenge against a member of a racially cognizable group." Rhone, 168 Wash.2d at 656, 229 P.3d 752. Some factors to consider in determining whether there was purposeful discrimination include:
(1) [S]triking a group of otherwise heterogeneous venire members who have race as their only common characteristic, (2) exercising a disproportionate use of strikes against a group, (3) the level of a group's representation in the venire as compared to the jury, (4) the race of the defendant and the victim, (5) past discriminatory use of peremptory challenges by the prosecuting attorney, (6) the type and manner of the prosecuting attorney's questions during voir dire, (7) disparate impact of using all or most of the challenges to remove minorities from the jury, and (8) similarities between those individuals who remain on the jury and those who have been struck.
Rhone, 168 Wash.2d at 656, 229 P.3d 752.
¶ 18 Although this is not an exhaustive list of factors that a court may consider in deciding whether "something more" exists, Meredith did not argue to the trial court that any of these factors were present. Instead, he argued that nothing in juror 4's answers indicated "that she was in any way confused, evasive or said anything that might lead one to believe that there would be a proper basis for removing the juror." III RP at 107. We hold that this alone is not "something more" under Rhone. And without this "something more" a court will not ascribe discriminatory motives to the challenge. We recognize that there are a host of other factors, any one of *329 which may determine a trial attorney's choice to remove a venire member, including the tone and inflections in a venire member's voice, as well as non-verbal cues, including eye contact, body gestures, reactions to other venire members' responses, et cetera. In sum, the record does not reflect any discriminatory motive in removing juror 4, nor does it exclude the existence of many potential non-discriminatory motives. Thus, we hold that the trial court did not err by concluding that Meredith did not meet his burden to show a prima facie case of purposeful discrimination.
¶ 19 Finally, we agree with the dissent that a defendant may rely on "[a] single invidiously discriminatory governmental act" to establish a prima facie case of purposeful discrimination. Dissent at 1 (quoting Batson, 476 U.S. at 95, 106 S.Ct. 1712). We agree, therefore, that the trial court applied the wrong legal standard when it concluded that Meredith had to demonstrate "a pattern of exclusion" in order to establish a prima facie case of purposeful discrimination. III RP at 111. But this error does not warrant reversal of Meredith's convictions because, as we explain in the preceding paragraphs, Meredith failed to establish a prima facie case of purposeful discrimination under both the Rhone majority's "something more" standard and the Rhone minority's bright-line rule. Accordingly, although the trial court applied an incorrect legal standard, its determination with regard to Meredith's Batson challenge was not clearly erroneous.
¶ 20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT, J.
JOHANSON, J. (dissenting).
¶ 54 I respectfully dissent for two reasons. First, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not require a pattern of racial discrimination. And, second, I agree with Justice Alexander's conclusion in his dissent in State v. Rhone, 168 Wash.2d 645, 659, 229 P.3d 752, cert. denied, ___ U.S. ___, 131 S.Ct. 522, 178 L.Ed.2d 385 (2010) (Alexander, J., dissenting), that there should be a bright-line rule "that a defendant establishes a prima facie case of discrimination when, as here, the record shows that the State exercised a peremptory challenge against the sole remaining venire member" of a specific racial group.
¶ 55 As to my first reason, the record shows that the trial court clearly applied the wrong standard articulated in Batson, 476 U.S. at 95, 106 S.Ct. 1712. Under Batson, "`a consistent pattern of official racial discrimination' is not `a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" Batson, 476 U.S. at 95, 106 S.Ct. 1712 (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). Batson replaced the previous "threshold requirement to prove systemic discrimination under a Fourteenth Amendment jury claim, with the rule that discrimination by the prosecutor in selecting the defendant's jury sufficed to establish the constitutional violation." Miller-El v. Dretke, 545 U.S. 231, 236, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).
¶ 56 Under these rules, the trial court's ruling here is clearly erroneous. The trial court held that "[t]he fact that there has been an exclusion of a single black juror is insufficient to establish a prima facie case pattern of exclusion." 3 Verbatim Report of Proceedings (VRP) at 111 (emphasis added). But as Justice Alexander noted in his dissent in Rhone, "it is clearly inappropriate for a trial court to consider whether the jury selection process involves systematic exclusion of venire members based on a discriminatory purpose." Rhone, 168 Wash.2d at 660, 229 P.3d 752 (citing Batson, 476 U.S. at 95, 106 S.Ct. 1712). Instead, "a `single invidiously discriminatory governmental act' is sufficient to warrant reversal of a conviction." Rhone, 168 Wash.2d at 660, 229 P.3d 752 (quoting Batson, 476 U.S. at 95, 106 S.Ct. 1712) (Alexander, J., dissenting). Here, the trial court *330 required Meredith to show systematic discrimination by showing a "pattern of exclusion." 3 VRP at 111. In so doing, the court applied the incorrect standard and, thus, its ruling was clearly erroneous.
¶ 57 My second reason for dissenting is that I would follow Justice Alexander's bright-line rule in Rhone: "a prima facie case of discrimination is established under Batson when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged."[12]Rhone, 168 Wash.2d at 661, 229 P.3d 752 (Alexander, J., dissenting). I agree with Justice Alexander that:
Speculation after the fact about whether the State had a discriminatory purpose in exercising a peremptory challenge is unreliable. The need to speculate can be avoided entirely by requiring the State to provide a short explanation when a defendant raises a Batson challenge.
. . . A bright line rule would provide clarity and certainty concerning the State's obligations in future cases and would simultaneously engender greater fidelity to Batson and its equal protection guaranty.
Rhone, 168 Wash.2d at 661-62, 229 P.3d 752 (Alexander, J., dissenting).
¶ 58 I recognize that Justice Alexander's proposed rule suggests that the dismissed juror must be of the same racial group as the defendant and that the majority here emphasizes this aspect of the rule. But in my view, the majority here reads this rule too narrowly by requiring the defendant and struck venire person to share the same race.
¶ 59 It is well settled that a defendant can object to a peremptorily challenged juror even though they do not share the same race. Powers v. Ohio, 499 U.S. 400, 406, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Limiting a defendant's right to object "conforms neither with our accepted rules of standing to raise a constitutional claim nor with the substantive guarantees of the Equal Protection Clause and the policies underlying federal statutory law." Powers, 499 U.S. at 406, 111 S.Ct. 1364; accord Rhone, 168 Wash.2d at 651 n. 2, 229 P.3d 752 ("The United States Supreme Court has expanded the scope of Batson's basic constitutional rule" to the use of peremptories by prosecutors "where the defendant and the excluded juror are of different races.").
¶ 60 Additionally, "Batson `was designed "to serve multiple ends,"' only one of which was to protect individual defendants from discrimination in the selection of jurors." Powers, 499 U.S. at 406, 111 S.Ct. 1364 (quoting Allen v. Hardy, 478 U.S. 255, 259, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986)). "The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system." Powers, 499 U.S. at 406, 111 S.Ct. 1364; see also Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) ("Whether jury service be deemed a right, a privilege, or a duty, the State may no more extend it to some of its citizens and deny it to others on racial grounds than it may invidiously discriminate in the offering and withholding of the elective franchise.").
¶ 61 I believe that a bright-line rule should not be limited to situations where the defendant and the peremptorily challenged juror share the same race. Limiting a bright-line rule in such a manner ignores the realities of the defendant obtaining a cross-section of his community. It also hinders the members of that community from equally participating in our legal system.
¶ 62 The benefit of giving each member of a racially cognizable group a fair opportunity to serve justice far exceeds the State's minimal burden in offering a race-neutral reason. Ensuring that justice is blind to race in selecting a jury pool is the ultimate goal, and a bright-line rule addressing the first prong of the Batson analysis should be crafted without considering the defendant's race against the peremptorily challenged juror's race.
*331 ¶ 63 The trial court applied the wrong standard by requiring the defendant to show a pattern of discrimination to establish a prima facie case. Alternatively, I would apply Justice Alexander's proposed bright-line rule to situations like this case, in which the defendant does not share the same race as the peremptorily challenged juror.
¶ 64 Based on my disagreement of the majority's Batson analysis, I would reverse the convictions.
NOTES
[1] Deoxyribonucleic acid.
[2] RCW 9A.44.076.
[3] Former RCW 9.68A.090 (1989).
[4] The trial court may have been referring to State v. Ashcraft, 71 Wash.App. 444, 859 P.2d 60 (1993).
[5] Justices Charles Johnson (writing), Susan Owens, James Johnson, and Debra Stephens.
[6] Justices Richard Sanders, Tom Chambers, and Mary Fairhurst joined.
[7] State v. Thomas, 166 Wash.2d 380, 397, 208 P.3d 1107 (2009).
[12] Justice Madsen did not adopt this bright-line rule in Rhone, but she stated that "going forward, [she] agree[d] with the rule advocated by [J. Alexander]." Rhone, 168 Wash.2d at 658, 229 P.3d 752 (Madsen, C.J., concurring).