

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 08 2013

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Aug 8, 2013

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 86825-5 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| GARY DANIEL MEREDITH, | ) | |
| | ) Filed | AUG 08 2013 |
| Petitioner. | ) | |
| | ) | |

OWENS, J. -- The equal protection clause of the federal constitution prohibits racial discrimination during the jury selection process. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Such discrimination in jury selection harms not only individual defendants and excluded jurors, it undermines the public's confidence in the basic fairness of the judicial system. *Id.* at 87. The United States Supreme Court established a three-part test (the *Batson* test) to detect and eradicate the discriminatory use of peremptory challenges during jury selection. The first step of the *Batson* test requires that the defendant make a prima facie showing of discrimination. *Id.* at 93-94.

1

In 2010, this court addressed that first step of the *Batson* test in *State v. Rhone*, 168 Wn.2d 645, 229 P.3d 752 (2010). In *Rhone*, the four-vote lead opinion applied this state's established rule for the first step of the *Batson* test. *See id.* at 657. The four-vote dissent proposed a new bright-line rule. *See id.* at 661. Chief Justice Madsen wrote a concurrence stating, "I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent." *Id.* at 658 (Madsen, C.J., concurring). This has caused lower courts to question whether, going forward, they should follow the rule in the lead opinion or the dissent of *Rhone*. *See, e.g., State v. Meredith*, 163 Wn. App. 75, 165 Wn. App. 704, 711-12, 259 P.3d 324 (2011), *review granted*, 173 Wn.2d 1031, 275 P.2d 303 (2012).

To clarify this issue, we granted review in this case solely on the scope of the bright-line rule articulated in *Rhone*. We now clarify that *Rhone* did not establish a bright-line rule and that the rule in Washington remains the rule applied in the lead opinion in *Rhone*.

## FACTS

In 1996, Gary Meredith was charged by amended information with rape of a child in the second degree and communication with a minor for immoral purposes. During jury selection for Meredith (a Caucasian man) the State used a peremptory strike to remove the only African-American member of the venire panel, juror 4. Meredith's counsel raised a *Batson* objection to the State's use of a peremptory

challenge against juror 4. Explaining the basis for the objection, Meredith's counsel stated that none of the juror's answers provided a proper basis for removal (such as confusion, evasiveness, or bias) and that the only reason the juror was removed was because of her race.

The prosecutor responded that Meredith's counsel had failed to satisfy his burden of proof because he had not presented any evidence other than to indicate that juror 4 appeared to be the only African-American on the panel. The prosecutor then indicated that there might be other racial minorities on the panel. Meredith's counsel responded that a prima facie case had been made and not rebutted. He then moved for a mistrial. The trial court denied Meredith's *Batson* objection. The jury subsequently found Meredith guilty of both rape of a child in the second degree and communicating with a minor for immoral purposes.

After his conviction, Meredith absconded and did not appear for his sentencing hearing in July 1996. The court then issued a bench warrant for Meredith's arrest. Twelve years later, Meredith was finally arrested and extradited to Washington.[1] In 2008, the trial court entered the judgment and sentence, imposing a 198-month sentence. Meredith appealed and while that appeal was pending, this court decided *Rhone*.

---

[1] The State does not make any argument as to whether Meredith's decision to abscond has any legal significance in this case. Because we find that *Rhone* did not establish a bright-line rule, we do not address whether Meredith's decision to abscond has legal significance.

The Court of Appeals affirmed Meredith's conviction and sentence. *Meredith*, 165 Wn. App. at 707. With respect to the *Batson* objection, the Court of Appeals majority expressed confusion as to whether the *Rhone* court adopted the bright-line rule from the dissent, but the Court of Appeals majority proceeded to hold that Meredith had failed to establish a prima facie case of purposeful discrimination under either the *Rhone* lead opinion's analysis or the dissent's bright-line rule.

Meredith petitioned this court for review of the Court of Appeals decision with respect to his *Batson* objection. We granted review "only on the issue of the scope of the bright line rule articulated in [*Rhone*] in establishing a prima facie case of discrimination under [*Batson*]." Order, *State v. Meredith*, No. 86825-5 (Wash. Apr. 23, 2012).

ISSUE

What is the scope of the bright-line rule articulated in the *Rhone* dissent?

ANALYSIS

In *Rhone*, four justices signed the lead opinion that employed the rule articulated in *State v. Hicks*, 163 Wn.2d 477, 490, 181 P.3d 831 (2008), and *State v. Thomas*, 166 Wn.2d 380, 397-98, 208 P.3d 1107 (2009), that a trial court may, but need not, find that a party has made a prima facie showing under *Batson* "'based on the dismissal of the only venire person from a constitutionally cognizable group.'" *Rhone*, 168 Wn.2d at 653 (lead opinion) (internal quotation marks omitted) (quoting

4

*Thomas*, 166 Wn.2d at 397). The lead opinion required "'something more' than a peremptory challenge against a member of a racially cognizable group." *Id.* at 654.

Four justices signed a dissent authored by Justice Alexander that would have adopted, in that case, a bright-line rule "that a prima facie case of discrimination is established under *Batson* when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged." *Id.* at 661 (Alexander, J., dissenting). Chief Justice Madsen signed neither opinion and instead wrote a two-sentence concurrence stating, "I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent." *Id.* at 658 (Madsen, C.J., concurring).

The Court of Appeals expressed uncertainty as to whether the court had adopted the bright-line rule described in the *Rhone* dissent. We now clarify that the court did not adopt that bright-line rule. Chief Justice Madsen's concurrence with the lead opinion "in this case" resolved the *Rhone* case. *Id.* Her second sentence expresses support for adoption of a bright-line rule in a future case, but it does not relate to the disposition of *Rhone* and is merely dicta. Until five justices agree to actually adopt such a bright-line rule, the previous rule remains in effect.

The Court of Appeals found that the trial court did not err under pre-*Rhone* case law. Because we granted review only on the scope of the bright-line rule articulated in *Rhone*, we do not review this portion of the Court of Appeals decision and thus

need not proceed with an analysis of Meredith's *Batson* objection under pre-*Rhone* case law.

## CONCLUSION

We granted review of this case so that we could clarify whether *Rhone* established a bright-line rule. We hold that it did not. Accordingly, we affirm the Court of Appeals.

*State v. Meredith*
No. 86825-5

_____
Owens, J.

WE CONCUR:

_____
Johnson

_____
Fairhurst, J.

_____

_____
Wiggins, J.

_____

_____

7

*State v. Meredith (Gary Daniel)*

No. 86825-5

MADSEN, C.J. (concurring)—In *State v. Rhone*, 168 Wn.2d 645, 658, 229 P.3d 752 (2010) (Madsen, C.J., concurring), I agreed with the dissent that a defendant should be able to establish a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), if the prosecutor exercised a peremptory challenge causing dismissal of the only remaining member of the venire who is in the same constitutionally cognizable racial group as the defendant or is the last remaining minority member of the venire.

This method of establishing a prima facie case is consistent with the United States Supreme Court's descriptions of ways to establish the prima facie case. In *Batson*, the Court observed that instead of showing systematic discrimination, a defendant can rely solely on circumstances surrounding jury selection in his or her own case. *Batson*, 476 U.S. at 95. The Court noted that the prima facie case may be shown when an inference of discrimination arises from a pattern of strikes against black members of the venire or, similarly, questions and answers during voir dire and jury selection may support an inference of discriminatory purpose. *Id.* at 96-97.

In *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005), the Court examined other specific ways in which evidence might establish a prima facie case, including, among other things, statistical evidence showing prosecutors disproportionately excluded blacks from the jury pool, evidence of markedly different questioning of black members of the venire from questioning of white members of the venire, and side-by-side comparisons of black venire members who were excluded to white venire members who were accepted.

State courts are not bound to any specific method for establishing the prima facie case. The Court has explicitly said that the states have "flexibility in formulating appropriate procedures to comply with *Batson*" and recognized that this flexibility applies to establishment of the prima facie case. *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005).[1] Permitting an inference of discrimination to arise from a peremptory strike against the sole member of the defendant's racially cognizable group or the last remaining member of a minority in the jury pool is a rule for establishing a prima facie case that falls within the guidelines suggested by the Court and lies within the "flexibility" a state court has to formulate ways in which to comply with *Batson*'s test.

In *Rhone*, although the dissent would have applied the bright line rule it advocated, I did not agree that the rule should apply in *Rhone* itself but instead should be a rule "going forward." *Rhone*, 168 Wn.2d at 658 (Madsen, C.J., concurring). By "going

---

[1] The Court has also expressed confidence that trial courts will be able to decide whether circumstances give rise to the inference. *Batson*, 476 U.S. at 97.

forward," I mean that this alternative method of establishing the prima facie case should be available once trial courts, prosecuting attorneys, and defendants and their counsel are on notice that this rule may be followed to establish a prima facie case. Thus, the rule should apply only when jury selection in the particular case occurred after *Rhone* was filed.

We have not yet been confronted with such a case. In the present case, jury selection occurred many years prior to the April 1, 2010 filing date of *Rhone*. Therefore, in my view, we have no cause to decide whether the rule in *Rhone*'s dissent, to which I agreed, should apply.

I concur in the majority's conclusion that the rule does not apply in the present case.

Madsen, C.J.

No. 86825-5

STEPHENS, J. (concurring)—In its attempt to decide this case on the narrowest possible ground, the majority offers an opinion that does nothing. It merely explains that our prior decision in *State v. Rhone*, 168 Wn.2d 645, 229 P.3d 752 (2010) also did nothing, at least nothing in terms of modifying the framework for evaluating claims of discriminatory jury selection under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). I find today's opinion wholly unsatisfying.

This case will no doubt be read in conjunction with *State v. Saintcalle*, No. 86257-5 (Wash. Aug. 1, 2013), in which the lead and concurring opinions lament that *Batson* has been largely ineffective, though only one opinion—Justice Chambers's dissent—would embrace the burden-shifting approach that five members of this court favored in *Rhone*. While we have today confirmed that *Rhone* did not garner a majority view, I think we do a disservice to leave matters at that. We should answer the question whether the use of a peremptory challenge to eliminate the sole African American venire member automatically establishes a

prima facie case of race-based discrimination. It was unnecessary to answer this question in *Saintcalle*, but it is squarely presented here.

The answer to this question is no because *Batson* seeks to eradicate only purposeful discrimination. *Johnson v. California*, 545 U.S. 162, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005); *State v. Hicks*, 163 Wn.2d 477, 181 P.3d 831 (2008); *State v. Thomas*, 166 Wn.2d 380, 208 P.3d 1107 (2009). A trial judge has discretion to determine when a peremptory challenge that removes the sole member of a protected group from the jury panel shows a discriminatory purpose. An absolute rule that requires a trial judge to find purposeful discrimination without any evidence of discriminatory purpose is not required by the constitution and crosses the line into making public policy. I signed the lead opinion in *Rhone* because it is consistent with what the constitution requires, and I would take this opportunity to reinforce that holding.

My view should not be confused with a lack of concern for *Batson*'s empty promise of community representation on juries. It is a shame that we have seen so little progress so many years after *Batson*. But, as I observed in my concurrence in *Saintcalle*, the problem is not one the judicial branch can solve on its own. Finding a meaningful solution will require consideration of issues far beyond the briefing in these two cases and legislative and social resources beyond what this court can devote.

I respectfully concur in the decision to affirm.

Steph. J.

No. 86825-5

GONZÁLEZ, J. (dissenting)—Our democracy is based on respect for the rule of law. When we are unable to resolve our disputes amicably by ourselves, we go to court and accept the judgment of our peers even when we do not like the outcome. This system works only if we all believe it is fair. If people are excluded from jury service because of color or creed, we risk eroding faith in the justice of our democracy.

Fortunately, the equal protection clause of the federal constitution prohibits all racial discrimination during the jury selection process. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). *Batson* was a good first step toward implementing the promise of the equal protection clause in jury selection, but it left the job partly done. *Batson* established a three-part test to determine if the State improperly used a peremptory challenge in a criminal case to exclude a potential juror based on race, real or perceived. First, the defendant must make a prima facie case of purposeful discrimination by raising an inference that a peremptory challenge was used to exclude a potential juror because of his or her race. *State v. Rhone*, 168 Wn.2d 645, 651, 229 P.3d 752 (2010) (citing *Batson*, 476 U.S. at 96). This first element is the one at issue for Meredith. Second, once a prima facie case is made, the prosecutor is asked if there is a race-neutral explanation for wanting to remove the

person from the pool. *Id.* Finally, considering the challenge, the race-neutral response, and the record as a whole, the court must determine if the defendant has established purposeful discrimination by a preponderance of the evidence. *Id.* If the court has followed this procedure, the judge's determination is given great deference on appeal, and the ruling will stand unless it is clearly erroneous. *Rhone*, 168 Wn.2d at 651 (citing *State v. Hicks*, 163 Wn.2d 477, 468, 181 P.3d 831 (2008)).[1]

In *Rhone*, five justices of this court established a more stringent rule to police against racial prejudice in jury selection. In *Rhone,* those five justices established that "going forward," "a prima facie case of discrimination is established under *Batson* when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged." *Rhone*, 168 Wn.2d at 658 (Madsen, C.J., concurring), 661 (Alexander, J., dissenting joined by Sanders, Chambers, and Fairhurst, JJ.). *Rhone* applies to all cases not final the day it was announced. *In re Pers. Restraint of St. Pierre*, 118

---

[1] The *Batson* rule has been extended to defendants as well as prosecutors. *Georgia v McCollum*, 505 U.S. 42, 44, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992). It has also been extended to civil cases. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991). The rule was further extended to cover gender discrimination. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 145, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). The rule in *Batson*, however, is narrower than the equal protection clause. If construed penuriously, the *Batson* rule addresses only overt discrimination and does little, if anything, to combat implicit bias.

In another case before this court, *State v. Saintcalle*, the limitations of the *Batson* rule and our jury selection process are apparent. No. 86257-5 (Wash. Aug. 1, 2013). The bright spot is that a majority of this court recognizes that bias is a factor in jury selection in Washington and that the *Batson* rule is largely ineffective in preventing it. Perhaps this recognition will lead to real changes in the jury selection process.

Wn.2d 321, 330, 823 P.2d 492 (1992). Meredith's appeal was not final the day *Rhone* was announced. He is entitled to its benefit.

Meredith is not a sympathetic litigant. He was convicted by a jury of rape of a child in the second degree and communication with a minor for immoral purposes. Meredith is white. He objected to the dismissal of a juror who was not white: the only African American person on the jury panel. Meredith argued that there was nothing in the jury questionnaires or the prospective juror's responses that indicated the juror would not be a fine juror. In response, the State asserted that Meredith had not met his burden of proof under *Batson*. The trial judge agreed in a cursory ruling. The judge did not require the State to offer a race-neutral reason for dismissing the last African American juror.

Meredith was convicted by that jury. Before he was sentenced, he ran away and hid for a dozen years, avoiding punishment for his crimes. He was eventually arrested and sentenced in 2008. If Meredith had not been in hiding for over a decade, he would have been sentenced and likely would have served a long prison term. He would probably not have had a successful challenge to the process of jury selection in his case under the *Batson* rule as applied in our State at the time. *See, e.g., Hicks*, 163 Wn.2d at 486. While he was gone, however, the law changed in his favor.

I understand why some hesitate to give Meredith the benefit of this change given his crimes and his flight from justice. But we must not decide cases based on sympathy or lack of it. The law protects even those like Meredith.[2] In *Rhone*, five

---

[2] In *Saintcalle*, we have declined to adopt a robust reading of *Batson* or to address in any way the problem of unchecked implicit bias in jury selection. If we limit *Batson*, but are serious about

justices of this court established that "going forward," "a prima facie case of discrimination is established under *Batson* when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged." *Rhone*, 168 Wn.2d at 658 (Madsen, C.J., concurring), 661 (Alexander, J., dissenting, joined by Sanders, Chambers and Fairhurst, JJ.). *Rhone* applies to all cases not final the day it was announced. *St. Pierre*, 118 Wn.2d at 330. Under *Rhone*, Meredith made a timely objection and established a prima facie case of discrimination in the selection of the jury in his case. The State was thus obligated to offer a race-neutral reason for dismissing the last African American juror. It did not. This is reversible error. Therefore, I would reverse his conviction.

I respectfully dissent.

---

addressing insidious discrimination in jury selection, we should consider (1) eliminating peremptory challenges all together, since we are not as good at discerning "good" jurors as we think we are; (2) reducing the number of peremptory challenges available to limit the mischief of unfettered exercise of challenges while preserving some discretion to litigants who, despite the evidence, cling to the belief that they know which jurors to eliminate; or (3) adopting a jury selection process similar to that used in federal court in the Western District of Washington, where voir dire is largely judge driven, reducing the ability of litigants to manufacture seemingly race-neutral reasons to justify challenging certain jurors based on unfounded stereotypes.

González, J.

*State v. Meredith (Gary)*

No. 86825-5

CHAMBERS, J.* (dissenting) — I dissent. I expressed my view of why *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), does not work and must be abandoned in *State v. Saintcalle,* No. 86257-5 (Chambers, J., dissenting) (Wash. Aug. 1, 2013). I strongly believe that Justice Alexander was right in *State v. Rhone,* 168 Wn.2d 645, 229 P.3d 752 (2010). As I said in *Saintcalle, Batson* had a limited purpose: to reduce purposeful racial discrimination in the jury selection process. *Saintcalle,* slip op. at 1 (Chambers, J.P.T., dissenting). But "*Batson* was doomed from the beginning because it requires one elected person to find that another elected person (or one representing an elected person) acted with a discriminatory purpose. . . . Further, *Batson,* by design, does nothing to police jury selection against unconscious racism or wider discriminatory impacts." *Id.* Following the rule set forth in Justice Alexander's opinion in *Rhone,* I would hold that a prima facie case of discrimination is established when the sole remaining venire member of a constitutionally cognizable racial group is peremptorily challenged. *Rhone,* 168 Wn.2d at 661 (Alexander, J., dissenting).

Meredith's appeal was pending when we announced *Rhone.* Meredith has established a prima facie case of discrimination. It was not rebutted. He is entitled to a new trial. I would reverse his conviction. I respectfully dissent.

---

*Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

*State v. Meredith,* No. 86825-5
Chambers, J.P.T., dissenting


Chambers, J.P.T.

2