**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 6 2017
Fairhurst. CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on July 6, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | |
| | ) | |
| Respondent, | ) | No. 93408-8 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MATTHEW ALEX ERICKSON, | ) | |
| | ) | Filed JUL 0 6 2017 |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — In 2013, Matthew Erickson, a black man, was charged in Seattle Municipal Court with unlawful use of a weapon and resisting arrest. After voir dire, the city of Seattle (City) exercised a peremptory challenge against the only black juror on the jury panel. After the jury was empaneled and excused from the courthouse with the rest of the venire, Erickson objected to the peremptory challenge, claiming the strike was racially motivated. The court found that there was no prima facie showing of racial discrimination and overruled Erickson's objection.

*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), guarantees a jury selection process free from racial animus. Yet, we have noted that our

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Batson* protections are not robust enough to effectively combat racial discrimination during jury selection. We have repeatedly signaled our desire to better effectuate the equal protection guaranties espoused in *Batson*. However, we had not yet found the opportunity to do so. Now, by explicitly asking this court to amend our *Batson* analysis and squarely briefing the issue, Erickson has provided that opportunity. As a threshold matter, we find that Erickson's *Batson* challenge was timely. We further adopt the bright-line rule first espoused by the dissent in *State v. Rhone*, 168 Wn.2d 645, 652 n.5, 229 P.3d 752 (2010) (plurality opinion). We amend our *Batson* framework and hold that the peremptory strike of a juror who is the only member of a cognizable racial group constitutes a prima facie showing of racial discrimination requiring a full *Batson* analysis by the trial court.

## FACTS AND PROCEDURAL HISTORY

In June 2013, Officer Kevin Oshikawa Clay observed Erickson near Westlake Park in Seattle, Washington. He testified that Erickson was walking down the sidewalk backward and with a knife drawn, followed by several other individuals. Clay and his partner followed Erickson into the Pacific Place shopping center, drew their weapons, and ordered Erickson to drop the knife. Erickson complied, but refused to follow the officers' instructions to lay facedown on the floor. After a prolonged physical struggle throughout which Erickson refused the officers' commands and resisted their physical efforts to restrain him, the officers subdued him

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and took him into custody. He was charged in Seattle Municipal Court with unlawful use of a weapon and resisting arrest.

After voir dire, each party exercised three peremptory strikes. The City used one of those strikes against juror 5, the only black juror on the panel, and Erickson made no objections at the time.[1] The six-person jury was subsequently seated, the rest of the venire excused, the jury sworn in, and the jury dismissed for the day. Erickson then objected to the striking of juror 5 pursuant to *Batson*, noting it was the first opportunity he had to do so without being "directly in front of the jury." 1 Verbatim Report of Proceedings (VRP) (Oct. 21, 2014) at 180.

Erickson argued that the City violated *Batson* when it struck juror 5. He claimed that the striking of the only juror from a cognizable racial group made a prima facie case that the juror was struck based on race. The City rebutted that Erickson had waived his right to a *Batson* challenge, claiming the objection was brought after the venire had been dismissed and the jury excused for the day, thereby making the objection untimely. It further argued that Erickson had not made a prima facie case of discrimination because *Batson* stands for the "proposition that there

---

[1] The trial court noted it could not conclude with certainty that juror 5 was the only black individual in the venire. However, the trial court and the parties could specifically remember four other "people of color" who were seated on the panel as well as another in the venire; they identified none of them as African American. 2 Verbatim Report of Proceedings (Oct. 22, 2014) at 193-95, 206-07.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

needed to be a pattern or practice of discrimination." 2 VRP (Oct. 22, 2014) at 200-01. It claimed the act of striking a single juror could not constitute such a pattern.

The municipal court found that Erickson had not waived the *Batson* challenge. However, it also found that Erickson had not presented a prima facie case for discrimination. Though juror 5 may have been the only black juror, there were a number of other jurors from "constitutionally cognizable groups" who remained on both the panel and venire after juror 5's strike. 2 VRP (Oct. 22, 2014) at 206-07. The court and the parties specifically identified five other individuals as "people of color," but did not explicitly speculate about those individuals' racial backgrounds or identities. *Id.* at 193-95, 205-07.

The court conceded that striking a single juror of a particular race could, under certain circumstances, rise to the level of prima facie discrimination. However, the court noted that it saw no such circumstances in this case. Because the municipal court ruled against Erickson on the first step of the *Batson* analysis, it terminated the analysis and allowed the trial to move forward. Erickson was convicted on both counts.

Erickson appealed the municipal court's decision to King County Superior Court. The superior court affirmed the municipal court, finding that the circumstances surrounding the challenge did not raise any inference that the juror was stricken because of his race. The judge did not address whether Erickson's motion was timely.

*City of Seattle v. Erickson*
No. 93408-8

Erickson then petitioned the Court of Appeals for discretionary review, which it denied. His motion to modify the commissioner's ruling was similarly denied. He finally petitioned this court for discretionary review, which was granted. *City of Seattle v. Erickson*, 187 Wn.2d 1008, 386 P.3d 1098 (2017).

ISSUES

1. Did Erickson waive his right to a *Batson* challenge when he objected after the jury was empaneled and both the jury and venire excused?

2. Did the trial court err in finding that Erickson did not make a prima facie showing of racial discrimination when the City struck juror 5?

STANDARD OF REVIEW

On one level, this case hinges on a procedural question about the appropriate timing for a challenge to a peremptory strike under *Batson*. On another level, this case represents the struggle to defend our equal protection guaranties and to continue fighting against racial discrimination in the jury selection process.

*Batson* created a three-part test to replace the "'crippling burden of proof'" previously required when attempting to prove a racially motivated strike. *State v. Saintcalle*, 178 Wn.2d 34, 43-44, 309 P.3d 326 (2013) (plurality opinion) (quoting *Batson*, 476 U.S. at 92). First, the defendant must establish a prima facie case that "gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94. Second, if a prima facie case is made, the burden shifts to the prosecutor to provide an

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adequate, race-neutral justification for the strike. *Id.* Finally, if a race-neutral explanation is provided, the court must weigh all relevant circumstances and decide if the strike was motived by racial animus. *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005) (quoting *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam)).

Though the United States Supreme Court provided this framework, it left the states to establish rules for the "particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Batson*, 476 U.S. at 99. These local rules can define when an objection is timely. *Ford v. Georgia*, 498 U.S. 411, 423, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). A trial judge's decision under the original *Batson* test is entitled great deference and will be reversed only if the defendant can show it was clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 364, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). However, this court has great discretion to amend or replace the *Batson* requirements if circumstances so require. *See Saintcalle*, 178 Wn.2d at 51.

As a threshold matter, we first must decide whether Erickson can bring a *Batson* challenge after the jury is empaneled and the rest of the venire excused. We then decide whether the municipal court erred when it found that Erickson had not established a prima facie case of racial discrimination in violation of equal protection. WASH. CONST. art. I, § 12. We find that Erickson's objection was timely and that the

municipal court erred when it failed to infer racial bias from the dismissal of the only

black juror on the jury panel.

> *1. Erickson Did Not Waive His Right to a* Batson *Challenge When He
> Objected to the Striking of a Juror after the Jury Was Empaneled but before
> Testimony Was Heard*

As noted above, the United States Supreme Court has left it to state courts and

legislatures to determine the procedure surrounding *Batson* challenges. *Ford*, 498

U.S. at 423. This court has not yet ruled on when a defendant may bring an objection

under *Batson*. However, objections must generally be raised "at a time that will

afford the [trial] court an opportunity to correct [the error]." *State v. Wicke*, 91 Wn.2d

638, 642, 591 P.2d 452 (1979) (citing *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86

(1975)). In the past, this court has reviewed a *Batson* challenge brought after the jury

was empaneled, though we declined to review the timeliness issue. *Rhone*, 168

Wn.2d at 652 n.5. We now choose to address it.

Several state and federal jurisdictions allow *Batson* challenges even after a jury

has been selected and sworn in. Virginia has developed a statutory rule that allows a

challenge after the jury has been sworn "with leave of court." *Lewis v.

Commonwealth*, 25 Va. App. 745, 749, 492 S.E.2d 492 (1997) (citing VA. CODE ANN.

§ 8.01-352). Texas, too, has developed a rule allowing a defendant to bring a

challenge after the jury is empaneled if the claim is "so novel" or the law "so well

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

settled" as to require it. *Jones v. Martin K. Eby Constr. Co.,* 841 S.W.2d 426, 428 (Tex. Ct. App. 1992).

A number of federal courts also allow *Batson* challenges after the jury has been sworn. In *United States v. Thompson,* the Ninth Circuit upheld a *Batson* challenge as timely even though it came after the swearing-in of the jury, noting the objectionable action "might not have been apparent until the jury was selected." 827 F.2d 1254, 1257 (9th Cir. 1987). That court later clarified its ruling, indicating that *Batson* challenges can be proper after a jury is sworn, but "must occur as soon as possible." *Dias v. Sky Chefs, Inc.,* 948 F.2d 532, 534 (9th Cir. 1991) (citing *Thompson,* 827 F.2d at 1257). The Seventh Circuit similarly allows *Batson* challenges after the swearing of a jury if it is the party's earliest opportunity. *United States v. Williams,* 819 F.3d 1026, 1029 (7th Cir. 2016). In contrast, the Eight Circuit gives deference to the trial courts in determining whether a *Batson* challenge brought after jury selection is appropriate. *See Reynolds v. City of Little Rock,* 893 F.2d 1004, 1009 (8th Cir. 1990).

We have not ruled on the timeliness of *Batson* challenges. However, finding the above approaches persuasive, we now hold that Erickson's *Batson* challenge was timely. Read together, the above decisions have adopted rules requiring that a *Batson* challenge be brought at the earliest reasonable time while the trial court still has the ability to remedy the wrong. These cases recognize that judges and parties do not have instantaneous reaction time, and so have given both trial courts and litigants

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

some lenience to bring *Batson* challenges after the jury was been sworn. This is in line with our own jurisprudence. Objections should generally be brought when the trial court has the ability to remedy the error, and allowing some challenges after the swearing in of the jury does not offend that ability. *Wicke,* 91 Wn.2d at 642.

In this case, Erickson did not bring his objection until just after the jury had been excused for the day and the venire dismissed. He noted that this was the first time the parties had been out of the presence of the jury. As the municipal court acknowledged, this limited the court's remedial options, but it did not remove them completely. Had the challenge been brought sooner and had the judge sided with Erickson, the judge may have placed the stricken juror back on the panel or dissolved the venire and called a new jury pool. Though these options were unavailable once the jury was sworn in, the judge could still declare a mistrial to address any error on the prosecution's part. When Erickson made his challenge, no other motions had been filed, no testimony heard, and no evidence admitted. The timing was not ideal, but the challenge was raised when the trial court still had an opportunity to correct it. We find that even though Erickson brought his challenge after the jury was empaneled, the trial court still had adequate ability to remedy any error. Therefore, Erickson made a timely challenge and we continue to the second issue for review.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson*
No. 93408-8

> 2. *The Municipal Court Erred When It Found That Erickson Had Not Provided a Prima Facie Case of Racial Discrimination in the Removal of Juror 5*

As noted above, the United States Supreme Court has left it to the states to provide *Batson* procedures. *Ford*, 498 U.S. at 423. Washington trial courts have traditionally given great discretion to findings of prima facie discrimination under *Batson*, and we review such traditional findings for abuse of that discretion. *State v. Hicks*, 163 Wn.2d 477, 490-91, 181 P.3d 831 (2008). However, we also have the power to determine, under appropriate circumstances, whether the traditional *Batson* analysis should be amended or replaced to ensure the promise of equal protection. *Saintcalle*, 178 Wn.2d at 51.

> A. This Court Has Not Foreclosed the Possibility of Adopting a Bright-Line Rule under *Batson*

This court recognized a trial court's discretion in finding prima facie discrimination in *Hicks*. There, the trial court found a prima facie showing of discrimination after the sole black jury member was struck. 163 Wn.2d at 491. We found that the trial court was "well within [its] discretion" to make such a finding, noting that *Batson* affords broad leeway to trial courts when it comes to prima facie showings. *Id.* at 490-91. We reaffirmed this holding in *State v. Thomas*, 166 Wn.2d 380, 397, 208 P.3d 1107 (2009).

We later signaled that this rule could be subject to change under particular circumstances. In *Rhone*, the defendant made a *Batson* challenge after the State

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

struck the last remaining African American member of the jury panel. 168 Wn.2d at 648-50. Five justices held that the trial court did not err in not finding a prima facie case when the sole black juror was struck. *Id.* at 655-56. In so doing, we declined to adopt a bright-line rule that the striking of the sole member of a particular race is a per se prima facie showing of discrimination. *Id.* at 653.

However, four dissenting justices and one concurring justice suggested that a bright-line rule would be appropriate. *Id.* at 661 (Alexander, J., dissenting), 658 (Madsen, C.J., concurring). The dissent reasoned that such a rule would not only lead to greater protection from racial discrimination, but would help effectuate Washington's elevated right to a fair jury trial. *Id.* at 661 (Alexander, J., dissenting). Those justices disagreed with the lead opinion that such a rule would change "a shield against discrimination into a sword cutting against the purpose of a peremptory challenge." *Id.* at 654 (C. Johnson, J., lead opinion). Rather, they believed it would "merely require the State to offer a race-neutral explanation for its peremptory challenge." *Id.* at 662 (Alexander, J., dissenting). Then Chief Justice Madsen's concurrence added that although applying such a rule would be inappropriate in the case before her, it could legitimately be applied "going forward." *Id.*

Justice Madsen clarified this statement in *State v. Meredith*, 178 Wn.2d 180, 306 P.3d 942 (2013). She reasoned that because the parties were not on notice of a bright-line rule in *Rhone* itself, it was inappropriate to apply such a rule under

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Rhone*'s facts. *Id.* at 186 (Madsen, C.J., concurring). However, she explained that "this alternative method of establishing the prima facie case [i.e., the bright-line rule] should be available once trial courts, prosecuting attorneys, and defendants and their counsel are on notice that this rule may be followed." *Id.* at 186.

This court also used the majority opinion in *Meredith* to clarify the *Rhone* decision. 178 Wn.2d at 184. We stated that despite the chief justice's concurrence expressing intent to adopt a bright-line rule going forward, it did not provide a binding, five-justice (or more) precedent. *Id.* We did not foreclose the possibility of eventually adopting such a rule. Rather, "[u]ntil [at least] five justices agree to actually adopt such a bright-line rule, the previous rule remains in effect." *Id.*

We most recently declined to alter the *Batson* framework in *Saintcalle*. There, the lead opinion noted that although this court has power to alter or replace the *Batson* framework, it ought not to do so when "[n]either party has asked for a new standard or framework" and when the trial court and the Court of Appeals did not consider such an argument. *Saintcalle*, 178 Wn.2d at 55. In this case, however, Erickson does ask for a reworking of *Batson*. He requests that we alter the standard framework to adopt a bright-line rule. Though this court declined to do so in *Saintcalle*, *Meredith*, and *Rhone*, the possibility of altering *Batson*'s framework is not closed to us. Erickson's case presents the circumstances *Rhone* alluded to, allowing us to amend our *Batson* analysis.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B.   We Adopt the Bright-Line Rule First Articulated in the *Rhone* Dissent

We now follow our signal in *Rhone* and adopt a bright-line rule.  The purpose

of *Batson* is to ensure that jury selection proceedings are free from racial

discrimination.  To create a prima facie case of racial discrimination, a defendant must

first demonstrate that the struck juror is a member of a "cognizable racial group."

*Batson*, 476 U.S. at 96.  Though a pattern of striking multiple jurors may demonstrate

racial animus, "'[t]he Constitution forbids striking even a single prospective juror for

a discriminatory purpose.'" *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203,

170 L. Ed. 2d 175 (2008) (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902

(9th Cir. 1994)).

Here, the trial court erred in the first step of its *Batson* analysis.  The court

noted that it could not discern a pattern of discriminatory strikes in part because other

people of color remained on the jury.  It found further that because there were other

people of color, the jury was "diverse."  With these findings, the court ruled Erickson

had not provided a prima facie showing of discrimination.

The trial court improperly applied the first step of the *Batson* analysis.  First, it

is misguided to infer that leaving some members of cognizable racial groups on a jury

while striking the only African American member proves the prosecutor's strike was

not racially motivated.  *Batson* is concerned with whether a juror was struck because

of his or her race, not the level of diversity remaining on the jury.  *Saintcalle*, 178

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d at 42. In addition, a *Batson* violation can occur if even one juror is struck. We have noted that "'[a] single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions.'" *Hicks*, 163 Wn.2d at 491 (alteration in original) (internal quotation marks omitted) (quoting *Batson*, 476 U.S. at 95). Though a pattern is informative, it is not necessary.

In addition, Erickson made his prima facie showing of discrimination. He challenged the prosecutor's peremptory strike based on the fact that juror 5 was the only black juror on the panel. The municipal court should have followed the example of the trial court in *Hicks*, at the least finding a prima facie case out of "'an abundance of caution.'" *Id.* at 484. This single strike, absent other circumstances showing legitimate grounds, was enough to trigger a prima facie finding. The trial court improperly relied only on the absence of a pattern and the presence of other nonwhite jurors to come to its conclusion. We find the trial court erred in its first step of the *Batson* analysis and Erickson properly made a prima facie showing of racial discrimination.

In light of these errors, we have broad discretion to alter the *Batson* framework to more adequately recognize and defend the goals of equal protection. *Saintcalle*, 178 Wn.2d at 51. In the past, this court has provided great discretion to the trial court when it comes to the finding of a prima facie case pursuant to a *Batson* challenge. To

14

ensure a robust equal protection guaranty, we now limit that discretion and adopt the

bright-line *Rhone* rule. We hold that the trial court must recognize a prima facie case

of discriminatory purpose when the sole member of a racially cognizable group has

been struck from the jury. The trial court must then require an explanation from the

striking party and analyze, based on the explanation and the totality of the

circumstances, whether the strike was racially motivated. *Batson*, 476 U.S. at 94;

*Saintcalle*, 178 Wn.2d at 42.

This alteration does not change the basis for a *Batson* challenge. The evil of

racial discrimination is still the evil this rule seeks to eradicate. Rather, this alteration

provides parties and courts with a new tool, allowing them an alternate route to defend

the protections espoused by *Batson*. A prima facie case can always be made based on

overt racism or a pattern of impermissible strikes. Now, it can also be made when the

sole member of a racially cognizable group is removed using a peremptory strike.

This court has long discussed a change to the *Batson* framework. In *Rhone*, we

signaled our intent to change our analysis, putting both courts and parties on notice of

that change. In *Meredith*, we declared that once at least five justices agree, a bright-

line rule could be adopted. In *Saintcalle*, we lamented the inadequate state of our

*Batson* inquiry but declined to alter it because neither party had raised the issue.

Here, the circumstance is different. Erickson explicitly advocates for a change to the

*Batson* test. Both parties have briefed the issue and placed it squarely before us. We

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson*
No. 93408-8

are not hampered with the same constraints that weighed us down in previous cases. We first find that Erickson has made a prima facie case of discrimination. We further take this opportunity to alter the *Batson* framework and adopt the bright-line rule described in the *Rhone* dissent.

### 3. *Remand for a New Trial Is the Appropriate Remedy*

Traditionally, the remedy for this error would be to remand to the trial court for a complete three-part analysis as the United States Supreme Court did in *Batson* itself. 476 U.S. at 100. But Erickson urges that if we adopt a new bright-line rule and find a prima facie case of discrimination, we should remand for a new trial. We agree. The trial court's in-person examination of the credibility and demeanor of the prosecutor and jury is essential in a *Batson* analysis. *Hicks*, 163 Wn.2d at 493. Here, the passage of time since the ruling would make this analysis problematic. Erickson's presiding judge has left the Seattle municipal bench. Even if he had not, he heard the original challenge in October 2014, two and a half years ago. It would be unreasonable to require the trial court to recall and evaluate the prosecutor's demeanor and credibility after that passage of time, let alone recall and evaluate the jury. It would also be inappropriate to dismiss Erickson's charges outright. *See State v. Grenning*, 169 Wn.2d 47, 60, 234 P.3d 169 (2010) ("[O]utside of reversal for insufficiency of the evidence . . . , outright dismissal is rarely granted."). However, remand for a new trial is generally appropriate when other rights, including trial rights, have been violated.

16

*See id.* at 61; *State v. Brightman*, 155 Wn.2d 506, 518, 122 P.3d 150 (2005); *State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991); *State v. Russell*, 101 Wn.2d 349, 354, 678 P.2d 332 (1984). Because of the unavailability of the original trial judge and the stretch of time since the original challenge, we remand the case for a new trial.

### CONCLUSION

We have repeatedly recognized that *Batson* is a particularly difficult hurdle to overcome. As Justice Wiggins noted in *Saintcalle*, "*Batson* . . . appears to have created a 'crippling burden,' making it very difficult for defendants to prove discrimination even where it almost certainly exists." 178 Wn.2d at 46. This underscores the need to amend our procedures and ensure that jury selection is more secure from the threat of racial prejudice. As a threshold matter, we find that Erickson's *Batson* challenge was timely. More significantly, we adopt *Rhone*'s bright-line rule. We hold that the peremptory strike of a juror who is the only member of a cognizable racial group on a jury panel constitutes a prima facie showing of racial motivation. The trial court must ask for a race-neutral reason from the striking party and then determine, based on the facts and surrounding circumstances, whether the strike was driven by racial animus.

We reverse and remand to the trial court for a new trial.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson*
No. 93408-8

Owens, J.

WE CONCUR:

Madsen, J.

Wiggins, J.

Gonzalez, J.

Geo. McCloy, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson (Matthew Alex)*

93408-8

STEPHENS, J. (concurring)—I find myself once again sounding "a note of restraint amidst the enthusiasm to craft a new solution to the problem of the discriminatory use of peremptory challenges during jury selection." *State v. Saintcalle*, 178 Wn.2d 34, 65, 309 P.3d 326 (2013) (Stephens, J., concurring). I continue to believe "there are better avenues than judicial opinions" for addressing this problem. *Id* at 69. While I have no opposition to the majority's decision to embrace the bright-line rule articulated in the *Rhone* dissent,[1] it is neither necessary nor particularly likely to transform the *Batson*[2] analysis into a useful tool for combatting racial bias in jury selection.

The majority's new rule is unnecessary because Matthew Erickson made a prima facie showing of intentional discrimination under the first prong of the *Batson*

---

[1] *State v. Rhone*, 168 Wn.2d 645, 658-64, 229 P.3d 752 (2010) (Alexander, J., dissenting).

[2] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

analysis by proving "'*something more*' than a peremptory challenge of a member of a racially cognizable group." S*tate v. Rhone*, 168 Wn.2d 645, 653, 229 P.3d 752 (2010) (plurality opinion) (emphasis added). Indeed, reversal under the traditional *Batson* framework was the sole argument raised in Erickson's motion for discretionary review.[3] *See* Mot. for Disc. Review (July 25, 2016) at 10-11 ("Because Mr. Erickson has shown 'something more'—that Juror 5 was stricken from the venire for sharing a relevant life experience steeped wholly in racism and racial tension—he has made the prima facie case for discrimination necessary to satisfy the first prong of *Batson*."). He further demonstrated that the trial court erred by considering his challenge in light of "whether there were members of *any* constitutionally protected group on the jury." *Id.* at 11.

Not only is the majority's new rule unnecessary to the resolution of this case, it is also unlikely to significantly reduce racial bias in jury selection because the ultimate inquiry under *Batson* remains whether the peremptory strike against a sole member of a constitutionally protected group evidenced *intentional* race discrimination. Both the majority and Erickson recognize that presuming

---

[3] Erickson first asked the court to embrace the *Rhone* dissent's approach in his supplemental brief after review was granted. Suppl. Br. of Pet'r at 16-18. Amici also advocated for this approach. Br. of Amici Curiae Am. Civil Liberties Union of Wash., et al. at 15-16.

For the latest reports, go to https://www.lexisnexis.com/clients/wareports/.

discrimination under the first step in the analysis is relatively unambitious. *See* majority at 11 (quoting *Rhone* dissent that its rule "'merely require[s] the State to offer a race-neutral explanation for its peremptory challenge,'" 168 Wn.2d at 662); Suppl. Br. of Pet'r at 18 (noting "such a bright-line rule does not create a substantial burden to any party" because "it would merely eliminate the first step of the *Batson* analysis"). Considering the range of justifications that have traditionally been recognized as race-neutral reasons for striking a juror under the second step of *Batson*, taking the first step may not represent much progress. *See, e.g., J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143 & n.16, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (noting peremptory strikes based on juror experiences disproportionately affecting minority groups remain race neutral absent a showing of pretext); *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (accepting bilingual status as race-neutral reason for striking Latino juror). We are unlikely to see different outcomes unless courts are willing to more critically evaluate proffered race-neutral justifications in future cases.

Pending before this court in our administrative rule-making capacity is a proposed court rule that would alter the method for evaluating claims of race-based peremptory challenges so that the intentional discrimination that must be proved under *Batson* is no longer required. *See* Proposed General Rule (GR) 37 (Wash.

-3-

*City of Seattle v. Erickson (Matthew Alex)*, 93408-8
(Stephens, J., concurring)

2017),[4]    http://www.courts.wa.gov/court_rules/?fa=court_rules.proposedRuleDis-play&ruleId=537 [https://perma.cc/YB3Q-U4ZK].   In addition to moving away from *Batson*'s intentional discrimination inquiry, the proposed rule also recognizes that many frequently proffered race-neutral reasons for striking jurors "have operated to exclude racial and ethnic minorities from serving on juries in Washington." *Id.* at cmt. 4.   It would therefore create a presumption against the validity of justifications such as "expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling," or "not being a native English speaker." *Id.* at cmt. 4(b), (g).   The proposed rule was formally published for comment from November 2016 through April 2017, and numerous individuals and organizations have commented on the rule.   *See* Comments for GR 37[5] (Wash. 2017),   http://www.courts.wa.gov/court_rules/?fa=court_rules.commentDisplay&ruleId=537.   The comments address not only the merits of the proposed rule, but also possible modifications, expansions or alternatives to the rule, and practical challenges to implementation.   The debate has been robust and informative, and has underscored two truths:   (1) *Batson* has largely failed in its promise to eliminate bias

---

[4] The rule was published as GR 36, but was renumbered as GR 37 due to the court's adoption earlier this year of a court security rule numbered GR 36 (effective April 25, 2017).

[5] *See* note 4.

-4-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson (Matthew Alex)*, 93408-8
(Stephens, J., concurring)

in jury selection and (2) finding a meaningful solution goes well beyond simply tinkering with the first prong of the *Batson* analysis.

The court has convened a work group to carefully examine the proposed court rule with the goal of developing a meaningful, workable approach to eliminating bias in jury selection. That process will be informed by the diverse experiences of its participants and will be able to consider far broader perspectives than can be heard in a single appeal. Unconstrained by the limitations of the *Batson* framework, the rule-making process will be able to consider important policy concerns as well as constitutional issues. It would be unfortunate if today's decision adopting the *Rhone* dissent's bright-line rule were perceived as somehow signaling that the court has "fixed the problem." I hope instead that our decision sends the clear message that this court is unanimous in its commitment to eradicate racial bias from our jury system, and that we will work with all partners in the justice system to see this through.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson (Matthew Alex)*, 93408-8
(Stephens, J., concurring)

Stephens, J

Fairhurst, CJ.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Seattle v. Erickson*, No. 93408-8
(Yu, J., concurring)


No. 93408-8

YU, J. (concurring) — I concur with the majority's effort to address the

equal protection concerns expressed in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct.

1712, 90 L. Ed. 2d 69 (1986), and I applaud the adoption of a bright-line rule.

However, I write separately because I am concerned that our solution assumes too

much and falls short on ensuring that no juror is removed solely because of race,

gender, sexual orientation, or religious beliefs. I am unable to say with certainty

that every peremptory challenge by the State against a person of color is motivated

by racial animosity, and adopting a bright-line rule that does not extend to

members of other cognizable groups does not address discrimination on any basis

other than race.

In my view, the basic framework of *Batson* does not work, and the record in

this case demonstrates the awkwardness and impracticability of the so-called

*Batson* challenge. Thus, I now join Justice González in calling for the complete

abolishment of peremptory challenges. *State v. Saintcalle*, 178 Wn.2d 34, 69-118,

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

309 P.3d 326 (2013) (González, J., concurring). Too many qualified persons are being excluded from jury service for no reason at all, and tinkering with court rules or issuing incremental decisions a decade at a time are unsatisfactory solutions. As Justice González wisely stated in his concurrence in *Saintcalle*,

> [T]he use of peremptory challenges contributes to the historical and ongoing underrepresentation of minority groups on juries, imposes substantial administrative and litigation costs, results in less effective juries, and unfairly amplifies resource disparity among litigants—all without substantiated benefits. The peremptory challenge is an antiquated procedure that should no longer be used.

*Id.* at 69-70 (citation omitted).

We should assume that all members of the public who adhere to a summons to appear for jury service are qualified to hear a case unless otherwise shown. Our system of jury selection provides a meaningful method for any party to remove a juror "for cause" when there is a showing that a particular juror cannot be fair or impartial. *Id.* at 77. Because jury selection is such an important part of trial, it may be time for us to require that counsel be afforded ample time for thoughtful questioning of prospective jurors, and that removal of jurors must rest solely on causal challenges.

I respectfully concur.

*City of Seattle v. Erickson*, No. 93408-8
(Yu, J., concurring)

Yu, J.

González, J.

3